## UNITED STATES v. CHANSLOR-CANFIELD MIDWAY OIL CO. et al.

(District Court, S. D. California.   September 10, 1918.)

No. A–39.

**1. Mines and minerals ☞36—Oil location invalid.**

Location of an oil placer mining claim in the names of a number of the locator's family and seven of his neighbors, who knew nothing of the location and refused to ratify it, but conveyed their interest without consideration to the members of locator's family who later conveyed to him, *held* to have been in effect for his sole benefit, and invalid.

**2. Mines and minerals ☞36—Prosecution of development work held not diligent, so as to take an oil claim out of operation of withdrawal order.**

The fact that an oil company, which owned or controlled a large number of claims in a California field, on some of which it was operating, had made preparation and assembled material for further development work in its holdings generally at the time of the presidential order of September 27, 1909, withdrawing lands from entry, *held* not such diligent prosecution of work for discovery on a claim within the withdrawal area as to take it out of the operation of such order; it not appearing that development work on that specific tract was intended.

In Equity. Suit by the United States against the Chanslor-Canfield Midway Oil Company, the Recovery Oil Company, Fred H. Hall, and others. Decree for complainant.

Decree modified 266 Fed. 145.

Henry F. May and Charles D. Hamel, both of San Francisco, Cal., for the United States.

U. T. Clotfelter, of Los Angeles, Cal., and Peter F. Dunne, of San Francisco, Cal., for defendants.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

BEAN, District Judge (sitting by special assignment). The property in controversy is public mineral land of the United States and within the area of presidential withdrawal order of September 27, 1909. Two principal questions are for decision: First, whether the paper location under which the defendants claim is legal and valid; and, second, whether the defendant oil company was, at the date of withdrawal order, in diligent prosecution of work leading to discovery on the property. I have heretofore had occasion to consider many questions arising under the withdrawal order and legislation with reference thereto. My views will be found in reported cases, and especially in U. S. v. Midway Northern (D. C.) 232 Fed. 620; U. S. v. Brookshire (D. C.) 242 Fed. 718; U. S. v. Northern American Cons. (D. C.) 242 Fed. 723; U. S. v. Thirty-Two Oil Co. (D. C.) 242 Fed. 730. It is enough for present purposes to state my conclusions, arrived at after a careful examination of the record and the arguments and briefs of counsel, without elaboration.

[1] The paper location was made on January 1, 1903, by Fred Hall, in the name of Mrs. Stokes, his mother-in-law and a member of his family, and seven of his neighbors. The alleged locators did not know of the location at or prior to the time it was made, and when subsequently advised thereof declined to assume or pay any part of the expenses incident thereto, or to accept or ratify the same; but on January 28, 1903, no doubt at the request or suggestion of Hall, they executed a deed conveying their interest, if any, to Mrs. Stokes, in trust for Hall. Mrs. Stokes held the title thus acquired until July, 1908, when she conveyed to Hall, who subsequently made the development contract under which the defendant oil company entered into possession. All of the alleged locators, except two or three, testified as witnesses at the hearing. None of them had more than a very faint, if any, recollection of the transaction; but all agreed that they never at any time intended to make the location, and never claimed any interest in the property, or expended any money thereon, or received any consideration for the conveyance to Mrs. Stokes, and although the evidence is that there was no previous agreement between them and Hall that the location should inure to his benefit, and no conscious intent on their part to violate the law, the manifest effect of the transaction, if valid, was to enable Hall to acquire more land by one location than the law permits, and would therefore seem to be invalid. U. S. v. N. A. Con., supra.

[2] But, however that may be, I am clearly of the opinion that the evidence wholly fails to support the claim that defendants were in diligent prosecution of work looking to discovery on the property at the date of withdrawal. It is admitted that there was no work on the premises at that time, or for months afterwards, but it is claimed that the defendant oil company was then making preparations, by assembling material and employing labor, for the future development of the property; but I do not think the evidence justifies the conclusion sought to be drawn from it. The oil company, at the date of withdrawal, owned or controlled several thousand acres of land in

various parts of the Midway field, portions of which it was operating and developing, and it no doubt contemplated the possible, if not probable, development of other portions at some time in the near future. It does not appear, however, that any work or preparation therefor being done or made was designed or intended for the development of the particular property in question, as distinguished from its other undeveloped holdings. I do not think it can be said, as a matter of law, that such work and preparation was work leading to discovery on the various claims owned or controlled by it. The law contemplates and requires something more to bring an occupant or claimant within the saving clause of the order of withdrawal or Pickett Act (Comp. St. §§ 4523–4525).

The able and forceful argument of counsel based on section 2332, R. S. (Comp. St. § 4631), the alleged knowledge of plaintiff's agents, and the effect of the act of Congress of June 25, 1910, do not lead me to change or modify the views expressed in United States v. Midway Oil Co. (D. C.) 232 Fed. 626. The opinion of the Court of Appeals in Consolidated Mutual v. U. S., 245 Fed. 521, 157 C. C. A. 633, is not in conflict therewith as I understand it.

It is no doubt true that the defendants, and especially the Recovery Oil Company, invested and expended large sums of money on the property in good faith, and with the honest belief that they would thereby acquire title; but such investments and expenditures were made after the order of withdrawal, and after the land had ceased to be open to entry, and the parties making the same were chargeable with knowledge that title could not thus be secured, if the order of withdrawal were valid, as was subsequently decided by the Supreme Court in the Midwest Case, 236 U. S. 459, 35 Sup. Ct. 309, 59 L. Ed. 673.

It follows that the plaintiff is entitled to a decree in its favor, and one may be prepared accordingly.